## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SUSAN LANGLEY                   :
                                :
v.                              :   Civil No. WMN-05-2108
                                :
THE PRUDENTIAL INSURANCE        :
COMPANY OF AMERICA              :

### MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendant The Prudential Insurance Company of America (Prudential).  Paper No. 12.  Plaintiff Susan Langley has filed a cross-motion for summary judgment.  Paper No. 13.  The motions are ripe for decision.  Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be denied and Plaintiff's cross-motion for summary judgment will be granted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by the Mid-Atlantic Federal Credit Union (Mid-Atlantic) for over 21 years.  Through her employment she received a disability insurance policy from Defendant.  In April 2002, Plaintiff underwent a laminectomy and spinal fusion surgery.  In June 2002, Plaintiff returned to work part-time.  A pedicle screw began to impinge Plaintiff's S1 nerve root and Plaintiff underwent a second surgery in early July 2002.  Both surgeries were performed by Dr. Ravi Yalamanchili.  Plaintiff returned to work, part-time, in mid-July 2002.  Plaintiff

maintains that by mid-August pain prevented her from continuing to work.  Her doctor took her off work for two months to recover. Plaintiff attempted to return to work twice more but reports that she was unable to work for more than brief periods of time.

Following her surgeries, Plaintiff was also treated by a neurosurgeon, Dr. Nathan Moskowitz, and a pain management specialist, Dr. John Casey.

Prior to her first surgery, Plaintiff applied for disability benefits.  Plaintiff received these benefits until August 30, 2002, when Defendant terminated Plaintiff's short-term benefits and disallowed long-term benefits.  Plaintiff appealed this decision three times.  Defendant rejected each of the appeals but extended Plaintiff's benefits so that Plaintiff received full benefits through March 2003.  Defendant classified Plaintiff's position as sedentary in nature and determined that Plaintiff could perform the material and substantial duties of her regular occupation.

In November 2003, Plaintiff filed suit in this Court challenging Defendant's denial of her claim.  Civil Action No. WMN-03-3181.  This Court remanded the action to Defendant for a re-evaluation of Plaintiff's claim.  Id., Paper No. 16.  After remand, Defendant issued a determination dated June 8, 2005, maintaining that Plaintiff is not entitled to disability benefits under the policy.  Now before the Court is Plaintiff's challenge

to that determination.[1]  The parties agree that the claims are
governed by the Employee Retirement Income Security Act of 1974,
as amended, 29 U.S.C. § 1001-1461 (ERISA).

## II.  LEGAL STANDARD[2]

The Fourth Circuit framework for reviewing a denial of
disability benefits under a policy covered by ERISA begins with
the de novo determination by the court of whether the language of
the plan grants the administrator discretion to determine a
claimant's eligibility for benefits.  See Feder v. Paul Revere
Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000).  If no
discretion is granted, then the Court must review the disability
decision de novo.  If, however, the language of the plan confers
discretion, then the reviewing court will overturn the decision
only for an "abuse of discretion" by the claims administrator.
See id. (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S.
101, 111 (1989)).  This deferential standard of review requires
that a reviewing court not disturb an administrator's decision if
it is reasonable, even if the court would have reached a
different conclusion.

As an additional safeguard, where a plan grants discretion

---

[1] On August 2, 2005, Plaintiff again filed suit in this Court
challenging Defendant's June 8, 2005, determination; Plaintiff
asserts two causes of action, wrongful denial of benefits and
breach of fiduciary duties.

[2] This is the same standard the Court set forth in its
November 9, 2004, Opinion in WMN-03-3181.

to an administrator who is "operating under a conflict of interest,[3] that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Elliott v. Sara Lee Corp., 190 F.3d 601, 605 (4th Cir. 1999) (citing Bruch, 489 U.S. at 115).  This modified standard applies on a case-by-case basis, deviating from the usual abuse of discretion standard only to the extent necessary to counteract any influence unduly resulting from the conflict.  Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997).

In this case, there is no dispute that the policy in question gives Defendant discretionary authority to determine eligibility for benefits.  Thus, the Court will review Defendant's decision under an abuse of discretion standard and will deny Defendant's motion only if the Court could conclude that the decision was unreasonable.  Additionally, given that Defendant, as both plan administrator and insurer, is operating under a clear conflict of interest, less deference will be given to Defendant's determination.  See Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 87 (4th Cir. 1993) (finding that when there is a conflict of interest the administrator's decision "will be entitled to some deference, but this deference will be

---

[3]Plaintiff is asserting a conflict of interest in this instance because Defendant's profit motive conflicts with the fiduciary duty of the administrator to act in the best interest of the plan beneficiary.

lessened to the degree necessary to neutralize any untoward
influence resulting from the conflict"). Therefore, Defendant's
decision will be upheld as reasonable only "if it is the result
of a deliberate, principled reasoning process and if it is
supported by substantial evidence." <u>Ellis</u>, 126 F.3d at 232
(citations omitted).

## III. DISCUSSION

The policy in question provides in pertinent part that an
individual is "disabled when Prudential determines that" the
individual is "unable to perform the material and substantial
duties" of his or her "regular occupation" due to "sickness or
injury." Record (R.) at 233.[4] "Material and substantial duties"
are defined as "duties that are normally required for the
performance of your regular occupation" and "cannot be reasonably
omitted or modified." Id.[5]

The Court concluded in its November 9, 2004, Opinion in WMN-
03-3181 that Defendant's decision was not the result of a
deliberate, principled reasoning process, supported by

_____

[4] Defendant has submitted a copy of the complete
administrative record used to render its disability
determinations. Documents in this record have been sequentially
numbered and the Court will use those numbers in referring to the
record.

[5] After 24 months of payments, an individual is considered
disabled when Prudential determines that, due to the same
sickness or injury, the claimant is "unable to perform the duties
of any gainful occupation" for which the claimant is "reasonably
fitted by education, training or experience." R. at 233.

substantial evidence.  The Court based its decision, in large
part, on three specific concerns the Court had pertaining to
Defendant's decision making process.  First, while Defendant
represented that it had reviewed all of the documentation in the
file pertaining to Plaintiff's claims, within the administrative
record submitted to the Court there were clearly irrelevant
documents, specifically, a Family and Medical Leave Act form for
a Prudential employee.  Second, the Court questioned the
Defendant's classification of Plaintiff's position as sedentary.
Third, the Court was troubled by the relative weight that
Defendant gave to the differing opinions concerning Plaintiff's
condition offered by the various health care professionals.
Specifically, Defendant did not mention Dr. Casey's opinion at
all and made selective use of the opinions of Plaintiff's other
two treating physicians, Dr. Yalamanchili and Dr. Moskowitz.  In
addition, the Court found that Defendant selectively used the
opinion of Michael Johnson, a physical therapist, who treated
Plaintiff.  The Court also found that Defendant relied heavily on
the opinion of Dr. Patrick M. Foye in its determination, but did
not cite his report in any of the four decisions denying
Plaintiff's claim nor was his report made a part of the record.

Defendant argues that it has addressed all of the Court's
concerns in its June 8, 2005, determination.  First, Defendant
explains that the FMLA form belonging to a Prudential employee
found in the administrative record was not in Defendant's claim
file and may have mistakenly been placed in the litigation file.

6

R. 276; Mot. 6.

Second, Defendant asserts that its classification of Plaintiff's position as sedentary is appropriate under the Policy.  The Policy requires Defendant to evaluate Plaintiff's ability to perform the material and substantial duties of her "regular occupation."  Under the Policy "regular occupation" is defined as, "the occupation you are routinely performing when your disability begins.  Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."  R. 233.  After evaluating Plaintiff's position, Defendant determined that the tasks of her position most closely matched the tasks of a "Disbursement Clerk," for which the physical requirements are sedentary in nature.  R. 305.  Defendant reasons that under the terms of the Policy even if Plaintiff may have been required to perform physical tasks specific to her employer, her regular occupation is normally performed as a sedentary occupation.  In addition, Defendant notes that in a March 26, 2003, phone call, Defendant asked Plaintiff's employer if any accommodation could be provided in terms of decreasing the lifting requirements and permitting Plaintiff to frequently change positions.  R. 54 Defendant reports that the employer answered in the affirmative. Id.

Third, Defendant argues that it re-evaluated the opinions of

Plaintiff's treating physicians and the June 8, 2005,
determination includes these opinions, as well as, the opinions
of the physical therapist.  In addition, Defendant explains that
Plaintiff's file was reviewed by Dr. Foye in a claim discussion
and he issued no written report.  R. 276, 301.  Upon remand,
Defendant arranged for an outside review of the medical
documentation in Plaintiff's file with Dr. Philip Marion.

Plaintiff contends that upon remand Defendant failed to re-
evaluate Plaintiff's claim, but rather merely attempts to
"explain away the deficiencies in the previous decision."[6]  Opp'n
9.  Plaintiff asserts that Defendant has simply added the
statements of Plaintiff's treating physicians that the Court had
previously noted were missing from its third determination and
has not "affirmatively address[ed] the court's concerns by
conducting a more principled review."  Id.

In particular, Plaintiff argues that Defendant selectively
quoted the opinions of the various physicians and that Defendant
failed to "justify the denial of the claim in the face of three

---

[6] Plaintiff argues that Defendant's failure to impartially
decide her claim is further illustrated by the decision of the
Social Security Administration (SSA), which found Plaintiff to be
disabled.  Opp'n 13-14.  Defendant objects to Plaintiff's mention
of the SSA decision, because it was not part of the
administrative record before Defendant.  Reply 9.  When reviewing
the decision of an administrator of disability benefits, courts
may not consider extrinsic evidence, that is, any evidence not
brought before the administrator.  Elliott, 190 F.3d at 608-09.
Accordingly, this Court will not give any weight to the decision
of the SSA.

treating physicians who stated that [Plaintiff] could not work
and two more physicians who . . . opined that, at best, she might
be able to work in a very limited environment."  Opp'n 10-11
(emphasis omitted).  Selectively choosing the portions of a
doctor's report that best support Defendant's decision to deny
Plaintiff's claim would be to evaluate the claim in bad faith.
See Davidson v. Kemper Nat'l Servs., Inc., 231 F. Supp. 2d 446,
453 (W.D. Va. 2002) (finding that a plan administer failed to
administer the plan impartially and granting summary judgment in
favor of the plaintiff).

        The three treating physicians made the following assertions:
In a statement dated October 25, 2002, Dr. Yalamanchili noted
that it was unknown if Plaintiff was disabled from all types of
employment.  R. 130, 303.  After repeatedly examining Plaintiff
and reviewing an MRI, Dr. Moskowitz found, in part, an "abnormal
fluid collection posterior to the thecal sac" and an epidural
scar surrounding the thecal sac that was causing slight
effacement of the thecal sac.  R. 121.  Dr. Moskowitz recommended
a lumbar sympathetic block and that Plaintiff see a pain
management doctor.  R. 117-118.  In an October 31, 2002, report,
Dr. Moskowitz opined that at that time Plaintiff was not capable
of working due to significant low back pain.  R. 119.  The pain
management specialist, Dr. Casey, opined in a letter dated March
10, 2003, that Plaintiff "is not anticipated to be able to

perform any work related activities due to constant and continued pain. . . . The patient at this time is considered to be a totally and permanently disabled from work related activities." R. 98-99.

Defendant arranged for Plaintiff to attend a Functional Capacity Evaluation (FCE), which was completed by Mr. Johnston, PT on March 11, 2003. Mr. Johnston determined that Plaintiff "could possibly perform sedentary work, but it would be a challenge, . . . she would have to be able to change positions as needed." R. 54. Upon remand Dr. Marion evaluated Plaintiff's condition and concluded that Plaintiff "should be restricted to sedentary duty (if tolerated by pain) with the ability to change positions as needed with maximal lifting of 10 pounds. There should be no climbing, bending, stooping, crawling, kneeling or crouching activities." R. 289. Dr. Marion concludes that "there is no objective impairment to preclude her from working sedentary duty with the ability to change positions as necessary." R. 290. In its June 8, 2005, determination, Defendant mentions the opinions of both of these physicians but left the term "possibly" out of Mr. Johnston's statement and also omitted the phrase, "if tolerated by pain" from Dr. Marion's opinion.

In its pleadings, Defendant emphasizes the fact that upon remand its re-evaluation of the claim included an additional independent medical review, that of Dr. Marion. Defendant

accurately cites to <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 834 (2003) for the proposition that, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician."  Dr. Marion, however, is the only licensed M.D. whose opinion Defendant purports to follow in its determination and, as previously discussed, Defendant misinterprets his opinion.  Further, the Court notes that Dr. Marion's opinion is based solely on the paper record, while the three treating physicians, whose opinions Defendant gives no weight, conducted physical examinations of Plaintiff.  <u>See</u> <u>Davidson</u>, 231 F. Supp. 2d at 20-21 (refusing to credit the opinion of the Defendant's own reviewing physicians, based solely upon an examination of the paper record, over that of the plaintiff's treating physician).

The Court agrees that Defendant failed to justify its conclusion that, "the medical evidence did not support [Plaintiff's] inability to perform the material and substantial duties of her regular occupation as a Lending Assistant, provided she is able to change positions as needed for comfort."  R. 305. Under the modified abuse of discretion standard, Defendant has failed to show that its decision was "the result of a deliberate, principled reasoning process and [that it was] supported by substantial evidence."  <u>See</u> <u>Ellis</u>, 126 F.3d at 232.

Simply adding the opinions of the various physicians to the

11

June 8, 2005, determination does not make Defendant's
determination "reasonable."  Defendant has not explained the
reasoning process behind its decision to give no weight to the
opinions of three treating physicians, who concluded
unequivocally that Plaintiff could not work.[7]  Nor has Defendant
provided a reason or evidence to support its conclusion that
Plaintiff could perform a sedentary duty if granted the ability
to change positions as necessary.  It presumably based this
decision on its own interpretations of the opinions of Mr.
Johnston and Dr. Marion, but importantly, Defendant completely
ignored the fact that these two physicians actually said that
sedentary work with a change in position could "possibly" be done
"if tolerated by pain."  Notably, none of the five physicians
quoted by Defendant came to the same conclusion concerning
Plaintiff's ability as Defendant.[8]  See Laser v. Provident Life &

_____

[7] In the June 8, 2005, determination, Defendant merely
concludes, "we have determined that the findings on physical
examination and [Plaintiff's] performance during the Functional
Capacity Evaluation are consistent with her ability to work in a
sedentary capacity with the ability to change positions as
needed." R. 305.  The Court cannot see how this conclusion
follows from the results of the aforementioned examinations.

[8] Defendant cites to the 1st Circuit case Leahy v. Raytheon
Co., 315 F.3d 11, 19 (1st Cir. 2002), for the proposition that
the existence of medical evidence pointing in two directions does
not render arbitrary and capricious a plan administrator's
decision to credit one viewpoint over the other.  The Court notes
that Defendant has not credited one physician's viewpoint over
the other, but has created its own adaption of the medical
opinion of Dr. Marion and Mr. Johnston.

Accident Ins. Co., 211 F. Supp. 2d 645, 657 (D. Md. 2002) ("an ipse dixit conclusion does not represent an adequate basis upon which to deny benefits under ERISA, especially when the plan administrator is laboring under a conflict of interest").  In addition, the Court also finds it notable that the two opinions that Defendant purports to follow are that of its own physicians, while completely ignoring the opinions of the treating physicians.  See Hines v. Unum Life Ins. Co., 110 F. Supp. 2d 458, 468 (W.D. Va. 2000) ("Simply because [the insurer's doctor] says it is so, does not make it so.").

A 2001 opinion issued by this Court offers further guidance in reviewing the present case.  In Brenner v. Hartford Life and Accident Ins. Co., the defendant, insurance policy administrator, arranged for the plaintiff to be examined by a doctor who without the benefit of a physical examination opined that the plaintiff would be capable of working "at an occupation where she would be able to, on an 'as needed' basis, get up and walk around, lie down, and alternate sitting with standing."  Civil Action No. WMN-00-608, 2001 U.S. Dist. LEXIS 2480, *4 (D. Md. Feb. 23, 2001).  The defendant identified six occupations which it believed would satisfy the plaintiff's physical limitations and terminated the plaintiff's benefits.  Id. at *14.  This Court found that this medical opinion contradicted that of the plaintiff's treating physician who opined that the plaintiff was

totally disabled from her own job and any other occupation.  Id.
at *3, *15.  The Court further concluded that greater deference
should have been accorded to the evaluation of the treating
physician and found the defendant's reliance on the
identification of six positions for which the plaintiff was
allegedly qualified to be unsupported.  Id. at *17-18.  The Court
specifically noted that it was hard to imagine that the plaintiff
was capable of working a regular work day considering her on-
going limitations of "not being able to lift or bend and the
necessity of having to change positions or lie down on an 'as
needed' basis." Id. at *19 (citing Ellis v. Egghead Software
Short-Term and Long-Term Disability Plans, 64 F. Supp. 2d 986,
995 (E.D. Wash. 1999) (noting that its hard to imagine a suitable
occupation for an employee who, in addition to other physical
limitations, cannot sit, stand, or walk for more than an hour at
a time)).

     Similar to Brenner, in the present case, Defendant's
assertions that Plaintiff could perform the substantial functions
of her job if allowed to change position frequently are
unsupported.  As previously mentioned, Defendant based this
finding on a misinterpretation of the opinions of those
physicians obtained by Defendant and by ignoring the opinions of
Plaintiff's three treating physicians.   As in Brenner and
Egghead, this Court finds it hard to imagine how Plaintiff's

limited sitting and standing tolerances could allow her to perform any occupation. Dr. Casey reported that Plaintiff had limitations in sitting and standing tolerance of ten minutes and that bending, sitting and standing increased her symptoms. R. 98. In the FCE report, Mr. Johnston noted that Plaintiff "demonstrated the ability to sit statically for 14 minutes at maximum. During the history portion [of the examination], she was observed to stand every 5 minutes for relief." R. 86. During an assessment of her static standing ability, she was able to stand for 22 minutes. Id. Neither of these points were addressed by Defendant in its June 8, 2005, determination and Defendant's assertion that in one phone call Plaintiff's employer confirmed that Plaintiff could change positions as needed and requirements for lifting could be modified does not explain how Plaintiff would be capable of working a regular day.

In light of Defendant's failure to make an impartial determination as to Plaintiff's claim, the Court now turns to the question of whether remand or reversal is appropriate. "The Fourth Circuit has indicated that while remand in ERISA cases should be used 'sparingly,' it is the 'most appropriate' course in cases in which 'the plan itself commits the trustees to consider relevant information which they failed to consider' during their initial examination of a claim." Laser, 211 F. Supp. 2d at 657 (quoting Elliott, 190 F.3d at 609).

A court may reverse in cases in which the administrator
committed "clear error or acted in bad faith." Bernstein, 70
F.3d at 789 n.6.  In this Court's November 9, 2004, decision to
remand the action to the administrator for a new determination
the Court noted that its concerns did not, at that time, rise to
the level of bad faith or clear error.  Civil Action No. WMN-03-
3181, Paper No. 16 at 13.  Importantly, the Court is now
reviewing Defendant's fourth determination of Plaintiff's claim
and Defendant's most recent determination was done upon Order of
this Court, which, as discussed above, Defendant failed to
fulfill.  See O'Bryhim v. Reliance Standard Life Ins. Co., No.
98-1472, 1999 U.S. App. LEXIS 19232 (4th Cir. Aug. 16, 1999)
(unpublished) (upholding the trial court's finding of bad faith,
where the court awarded the plaintiff benefits based, in part, on
the defendant's failure to follow the instructions of the court
when it remanded the defendant's initial determination back to
the defendant for review).

The facts of the present case are also similar to those of
Hines, in which the Court found that disregarding medical
evidence of a disability during two separate reviews descends to
bad faith.  Hines, 110 F. Supp. 2d at 466.  In the present case,
Defendant initially ignored the opinions of Plaintiff's three
treating physicians in its April 24, 2003, determination.  After
this Court questioned that determination and remanded the action

16

back to Defendant to consider the opinions of the treating physicians, Defendant merely included the opinions in its June 8, 2005, determination but failed to provide any explanation for ignoring the opinions of those physicians.  Further, Defendant selectively quoted the opinions of its own physicians to support its denial of benefits, which is yet another illustration of bad faith.  See Davidson, 231 F. Supp. 2d at 453 (noting that selectively choosing the portions of a physicians report that best supported the plan administrator's denial of benefits would be to evaluate the claim in bad faith).

In addition to her disability benefits, the Court may in its discretion award reasonable attorneys' fees and costs.  29 U.S.C. § 1132(g).  The Fourth Circuit has set forth the following factors to be considered by a district court when awarding fees and costs in an ERISA claim: 1) bad faith; 2) ability to pay; 3) potential for deterrence; and 4) the relative merits of the parties' claims.  See O'Bryhim, 1999 U.S. App. LEXIS at *11, *26 (citing Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th Cir. 1993)(en banc)).

The Court is of the opinion that all of the above factors apply in this case.  The record here establishes Defendant's bad faith in administering the plan.  Further, the Court finds that Defendant has the ability to pay Plaintiff's fees, that granting attorney's fees can be a deterrent to similar, subsequent

conduct, and that the relative merits of the parties' claims
weighs heavily in favor of Plaintiff.  Thus, Plaintiff is
entitled to an award of reasonable attorney's fees.  As to the
amount of such an award, the parties are instructed to brief that
issue in a manner consistent with Local Rule 109.2.

## IV.  CONCLUSION

For these reasons, Plaintiff's cross-motion for summary
judgment will be granted and Defendant's motion for summary
judgment will be denied.  A separate order consistent with this
Memorandum will follow.

_____/s/_____

William M. Nickerson
Senior United States District Judge

Dated: June 13, 2006